IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

ADAMS COUNTY                                                    PLAINTIFF

V.                              CIVIL ACTION NO. 5:23-cv-113-DCB-LGI

DELTA-ENERGY NATCHEZ                                            DEFENDANT

<u>ORDER AND OPINION</u>

This matter comes before the court on Plaintiff Adams
County's Motion for Summary Judgment [ECF No. 21]. The Court
notes that Plaintiff filed both the motion and a memorandum in
support [ECF No. 21, 22], to which Defendant responded with a
response and memorandum in opposition [ECF No. 26, 27]; however,
Plaintiff did not file a reply to Defendant's response. Under
local rules, Plaintiff had seven days after the filing of
Defendant's response to file a reply. S.D. Miss. L.R. 7(b)(4).
This deadline passed on September 17, 2024. In considering this
motion, the Court takes into account the filings associated with
Plaintiff's motion and Defendant's response.

For the reasons discussed below, this motion for summary
judgment is DENIED.

I.   Background

Adams County ("the County") brought this breach of contract
action against Delta-Energy Natchez ("Delta") in the Circuit
Court of Adams County. [ECF No. 1] at 1. The County's cause of

action arises out of three separate agreements between the parties. [ECF No. 22] at 1. Each agreement concerns a lease allowing Delta to locate a plant facility upon county property. Id. The agreements at issue include a Memorandum of Agreement ("Memorandum") between the parties [ECF No. 7-1]; a lease with three addenda [ECF No. 14-1]; and an assignment of Delta's rights and obligations under the lease to a third party [ECF No. 14-1], though the extent to which Delta assigned its rights is contested.

The Memorandum of Agreement was intended to induce Delta to locate the plant in Adams County. [ECF No. 22] at 1. Under the Memorandum, the County would apply for a Mississippi Development Infrastructure Grant "to secure the location or expansion of the Company [Delta], and for the purpose of making rail improvements [to the rail system]" at the facility, while Delta agreed to perform several responsibilities as lessee, including creating ninety-one full-time and/or full-time equivalent jobs at the facility. [ECF No. 7-1] at 1. For each job short of the number required by the contract, Delta would owe the county $6,468. Id. at 2. Adams County alleges that the defendant only created sixty-one jobs at its highest performance. [ECF No. 7] ¶ 5. Thus, in its amended complaint, Adams County seeks monetary damages of $194,040, equal to the number of jobs by which Delta was deficient, multiplied by $6,468. Id. ¶ 6.

In its answer to the amended complaint, Delta responds by claiming that Adams County failed to upgrade the rail system as it had promised in the agreement. [ECF 8] at 2. Delta further argues that the County's failure to upgrade the rail system was a proximate cause of its inability to provide the ninety-one jobs required by the Memorandum and constituted a breach of contract by the County under the Third Addendum to the lease agreement. [ECF 27] at 3.

## II.  Jurisdiction

Invoking diversity jurisdiction, Delta removed the case to this court. [ECF No. 1]. A federal district court has diversity jurisdiction if the amount in controversy exceeds $75,000, exclusive of interests and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). Here, the damages sought by Adams County exceeds $75,000, exclusive of interest and costs. Adams County is a governmental entity organized under the laws of the State of Mississippi, and Delta is an LLC incorporated in Delaware. Id. ¶ 6. An LLC is considered a citizen of every state in which one of its members is a citizen. Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1080 (5th Cir. 2008). Because none of Delta's members are Mississippi citizens, the diversity requirement is met.

Jurisdiction is based on diversity of citizenship, so the Court applies Mississippi contract law to the substantive issues in this case. Carpenter Properties, Inc. v. J.P. Morgan Chase Bank, N.A. No. 3:07-CV-278 HTW-LRA, 2015 WL 13283381, at *2 (S.D. Miss. Mar. 30, 2015) (r'ved on other grounds) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).

III. Summary Judgment Standard

In a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A party cannot defeat a properly supported summary judgment motion by directing the Court to conclusory allegations or presenting only a scintilla of evidence. Lincoln v. Scott, 887 F.3d 190, 195 (5th Cir. 2018). Instead, the non-movant must "identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (citing Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir.), cert. denied, 513 U.S. 871 (1994)).

The evidence must be viewed in the light most favorable to the nonmoving party. <u>Vann v. City of Southaven, Miss.</u>, 884 F.3d 307, 309 (5th Cir. 2018); <u>Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.</u>, 627 F.3d 134, 138 (5th Cir. 2010). The Court neither assesses credibility nor weighs evidence at the summary-judgment stage. <u>Wells v. Minnesota Life Ins. Co.</u>, 885 F.3d 885, 889 (5th Cir. 2018). Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

IV.  Analysis

A. Adams County's Claim of Breach of Contract

The County posits that no genuine issue of material fact exists on its breach of contract claim and that therefore the County is entitled to summary judgment. [ECF 22] at 3. The Mississippi Supreme Court has held that the elements of a breach of contract claim are (1) the existence of a valid and binding contract, and (2) that the defendant has broken or breached it. <u>Business Communs., Inc. v. Banks</u>, 90 So. 3d 1221, 1224-1225 (Miss. 2012)(holding that damages are not an element, but a remedy); See also <u>Watkins & Eager, PLLC v. Lawrence</u>, 326 So. 3d 988, 991 (Miss. 2021).  "[A] plaintiff seeking monetary damages

for breach of contract must put into evidence, with as much accuracy as possible, proof of the damages being sought." Banks, 90 So. 3d at 1225. "Equity will enforce a contract for liquidated damages if such liquidated damages can be found to be reasonable and proper in the light of the circumstances of the case." Board of Trustees v. Johnson, 507 So. 2d 887, 889-890 (Miss. 1987). If the damages are a reasonable pre-estimate of the costs of the plaintiff, then they are reasonable and proper. Id. at 890.

Plaintiff argues that it is entitled to summary judgment on its breach of contract claim because it is uncontested that the parties entered into the Memorandum, which required Delta to create ninety-one jobs and that the defendant was 30 jobs short. [ECF No. 22] at 3. Therefore, Plaintiff continues, there is no genuine issue of triable fact as to whether a contract existed and or whether Defendant fulfilled the terms of the contract. Id. Plaintiff argues it is entitled to summary judgment because it has presented an uncontested prima facie case for breach of contract and neither Defendant's counterclaim nor affirmative defense of setoff are procedurally proper, and neither raises any genuine factual dispute.

Delta does not dispute either the existence of a valid contract or its breach of such contract; therefore, it is

undisputed that the elements of a breach of contract claim have been met: there was a valid and binding contract between the parties, namely, the Memorandum of Agreement, and Delta breached that agreement by failing to provide ninety-one jobs. Therefore, to the extent Plaintiff seeks a determination that Defendant breached the contract, the Court agrees. However, Delta argues that damages cannot be determined without resolving the factual dispute of whether it created sixty-one or sixty-three jobs. Additionally, Delta responds to each of Plaintiff's arguments, enumerated below, for eliminating the defendant's counterclaim and affirmative defense of setoff. The Court's analysis of each of these issues discussed in Plaintiff's Motion for Summary Judgment and Defendant's Response follows.

B. Whether Delta Created Sixty-One or Sixty-Three Jobs

In both the amended complaint and in the motion for summary judgment, Plaintiff alleges that Delta only created sixty-one jobs, breaching its contractual obligation to create ninety-one jobs. [ECF No. 22] at 3. Although Defendant admits it did not create the required number of jobs, it argues that it created sixty-three jobs, which would lower the County's damages due to the breach by $12,972. To support its position that it created sixty-three jobs rather than sixty-one, Delta presents an excerpt from its payroll journal for the dates between June 6th,

7

2023, and June 17th, 2023. [ECF No. 26-1] at 12-24. Plaintiff offers no evidence to support its position that Defendant only provided sixty-one jobs. A factual issue exists in the damages calculation as to how many jobs the defendant provided and therefore how much the company owes to the County for breach of contract.

Because a determination of damages is dependent upon a determination of the number of jobs Delta provided, and because the defendant has presented evidence that would show more jobs were created than Plaintiff alleges, the Court DENIES Plaintiff summary judgment as to the amount owed in damages.

> C. Whether the Counterclaim and Affirmative Defenses were Timely

Plaintiff argues that Defendant's counterclaim and affirmative defense of setoff are barred as untimely. [ECF No. 21] ¶ 8-11. Plaintiff asserts that "it is uncontested that County finished its construction before June 13, 2019," and that Defendant did not assert any claim of setoff against the County until its counterclaim on February 22, 2024. Id. at 2. Under Mississippi law, claims for breach of contract must be commenced within three years after the cause of action has accrued. Miss. Code Ann. § 15-1-49; USF&G Co. v. Conservatorship of Melson, 809 So. 2d 647, 652 (P19) (Miss. 2002); Lloyd v. Gibbes, 910 So. 2d

587, 591 (Miss. Ct. App. 2005); (stating that a claim on a
written contract is subject to the statute of limitations set
out in Miss. Code Ann. § 15-1-49). Miss. Code Ann. § 15-1-71
requires setoff to be held against a creditor prior the statute
of limitations having run, which in this breach of contract case
would be three years. [ECF No. 22] at 4. Because Plaintiff
maintains that the County finished its construction before June
13, 2019, and Defendant did not assert any breach of contract or
setoff claim until over three years later on February 22, 2024,
Plaintiff argues that Defendant's claim is barred due to the
statute of limitations. [ECF No. 21] ¶ 10, 11.

Delta responds that it is "a vigorously contested fact"
that the County finished its construction on the rail upgrade
before June 13, 2019, arguing that the construction completed by
that date was not adequate and therefore was insufficient to
meet the County's obligation under the contract. [ECF No. 26] ¶
8. Defendant explains that the County never finished its
construction to the satisfaction of either Delta or the railroad
authorities, according to the declarations of former Delta CEOs
Robert Kennedy and Robert Genovese, respectively. [ECF 26-2];
[ECF 26-3].

The defendant argues that it incurred damages due to the
County's failure to adequately upgrade the rail system in

December 2021; therefore, the statute of limitations had not run
by the time the Complaint was filed in 2023. [ECF No. 26] ¶ 8.
These damages include its inability to hire ninety-one people as
required by the contract. Defendant further argues that
Plaintiff's failure to upgrade the rail system is a breach of an
ongoing obligation under the Third Addendum, which requires the
County to seek funds for the payment of the rail upgrades so
long as those funds are not from local sources. Id. ¶ 11.

Defendant presents evidence in the form of the declarations
of Mr. Kennedy and Mr. Genovese as well as the Third Addendum to
support its argument that the harm from failure to upgrade was
ongoing and that the statute of limitations did not begin to run
in June of 2019, because at that point the County had not
competently completed construction. Id. at [ECF No. 26-2]; [ECF
No. 26-3]. Defendant has presented sufficient evidence to create
a genuine dispute as to when or whether the County competed the
rail construction for the purposes of the statute of
limitations. Therefore, the County's motion that Delta's
counterclaim and affirmative defense should be dismissed at this
stage is DENIED.

> D. Whether Delta Assigned and Transferred Any Rights to
>    the Lease to a Third Party When it had Terminated the
>    Lease Prior to the Assignment

The County argues that Delta has no interest in the Third
Addendum because it assigned all of its rights under the
agreement to a third party and therefore has no standing to
bring claims for breach of the Third Addendum. [ECF No. 22] at
5. The County explains that "[a]ssigned contractual rights may
be enforced by the assignee—who essentially 'stands in the
shoes' of the assignor and who 'takes no rights other than
those' which the assignor had possessed," and that "[i]t has
long been held that a valid assignment of a debt or contract
conveys the entire interest of the assignor to the assignee, and
thereafter the assignor has no interest therein." Id. at 4-5
(citing Great Southern Nat'l Bank v. McCullough Environmental
Services, Inc., 595 So. 2d 1282, 1287 (Miss. 1992)[citing
Indiana Lumbermen's Mut. Ins. Co. v. Curtis Mathes Manufacturing
Co., 456 So.2d 750, 755 (Miss. 1984)]; Great Southern Nat'l
Bank, 595 So. 2d. ([citing International Harvester Co. v.
Peoples Bank & Trust Co., 402 So.2d 856, 861 (Miss. 1981)]).

Defendant counters that it terminated the lease of the
plant facility by letter of termination dated December 28, 2023,
prior to the assignment which occurred on January 31, 2024, and
that there is no evidence the parties entered into a new lease
prior to the purported January assignment. [ECF No. 27] ¶ 9;
[ECF no. 14-1]. Therefore, Delta argues, it preserved and
protected its right to bring a claim for a breach of contract

11

that occurred under the Third Addendum before January 31, 2024,
notwithstanding the purported assignment of a terminated lease.
[ECF No. 27] ¶ 10. Defendant further states that it is an issue
of contested fact for trial whether it intended to assign any
claim or cause of action for damages or defense to any claims
for breach of contract that county might assert. Id. ¶ 11.

Delta takes the position that the assignment only obligates
the assignee to perform limited, enumerated undertakings and
therefore does not constitute a full assignment of all rights
and obligations under the lease. Defendant points to several
pieces of evidence to support its position. First, it cites the
Lease Assignment, which limits the assignee's obligations "to
prospective payments owed under the Lease and do not include any
unpaid historical obligations including base rent, additional
rental, taxes of any kind, insurance premiums, expenses,
charges, and set offs whatsoever." Id. ¶ 11 (citing the lease
assignment at [ECF No. 14-1]).

Second, Delta provides the declaration of Robert Kennedy,
who previously served as the company's interim CEO. Mr. Kennedy
states that while the defendant did assign certain rights under
the lease, "it did not assign its counterclaim or its right to
sue the County for damages, retaining those as evidenced by the
Counterclaim filed in this Civil Action. And, the Assignee's

obligations under the Assignment did not include pursuit of a counterclaim for breach of contract." [ECF 27-1] ¶ 9. Delta argues that because the assignee did not undertake to prosecute a counterclaim for breach of contract, and because the assignee assumed no obligations under the Lease and assignment except those that came due on or after January 31, 2014, the assignment did not include the right to sue for a breach of the Lease prior to January 31, 2014. Id. ¶ 11. Therefore, Defendant argues, it retained the right to sue for the County's breach of contract by its failure to upgrade the rail system. Id.

Because Delta presents evidence sufficient to raise a factual dispute as to whether the assignment precludes it from bringing suit under the Third Addendum to the Lease, Plaintiff's motion for summary judgment on the ground that Defendant had assigned away its right to sue is DENIED.

E. Whether Delta Waived Any Right of Action

Plaintiff next argues that Defendant waived any right of action against the County under the lease by signing the Third Addendum. [ECF No. 22] at 5. Plaintiff posits that Delta entered into the Third Addendum with full knowledge of all work performed by County under the Memorandum of Agreement ("Memorandum"), and that the parties agreed that the County would seek additional grant funding (but in no case local

funding) to further upgrade the rail. Id. Under Mississippi law, waiver occurs when a party intentionally relinquishes or surrenders a right with full knowledge of that right's existence. Rogers v. Estate of Pavlou, 326 So. 3d 994, 000 (Miss. 2021). Plaintiff argues that Delta knew of the condition of the rail improvements when it agreed to the Third Addendum, which granted it a license to use the County's other track until non-local grant funds could be obtained. [ECF No. 22] at 5. Because Delta knew about the condition of the rail system when entering into the Third Addendum, and because it agreed that the County would not be obligated to pay to repair the rail using local funds, Plaintiff argues, Delta waived any claims against the County when entering into the Third Addendum. Id.

Defendant argues that it did not waive its right to bring suit and that the Third Addendum created a new obligation on the part of the County to seek non-local funds to repair the rail. [ECF No. 26] ¶ 12. Delta concedes that it entered into the Third Addendum with the knowledge that the County had not performed the rail upgrades it had promised. Id. It explains that this knowledge led it to require the County to promise in the Third Addendum to seek funds to finish the "incomplete and unacceptable" previous upgrades and to finish the upgrades. Id. Delta further argues that the County acknowledged that the obligation was not fulfilled by agreeing to seek funds to

14

upgrade the rail system, and that it neither expressly nor impliedly waived any right to sue for breach of the Third Addendum and the repair undertaking of the County. Id. The Defendant contends that the County's failure to obtain the grant funds to upgrade the rail system after agreeing to the Third Addendum constitutes a breach of the Third Addendum for which there was no waiver.

Under Mississippi law, waiver is a fact question for the jury, "unless the evidence is so clear that reasonable minds could not differ." Armstrong v. Mississippi Farm Bureau Cas. Ins. Co., 66 So. 3d 188, 192 (Miss. Ct. App. 2011). Here, Delta has presented evidence disputing the County's claim that it waived any claim based on the County's failure to upgrade the rails by agreeing to the Third Addendum. Therefore, summary judgment on the issue of waiver is improper, and is DENIED.

F. Whether the Plain Terms of the Agreement Preclude
   Summary Judgment

The County further argues that Defendant has presented no basis for relief under the terms of any agreement between the parties. [ECF No. 21] ¶ 16. Plaintiff maintains that it is uncontested that the terms of the Memorandum of Agreement ("Memorandum") only obligated the County to: "a. submit a grant application to MDA [Mississippi Development Authority], b. Sign

the grant agreement with MDA, c. Hire administrators and consultants, d. Abide by all state statutes and guidelines, and e. pay at least $65,400 in local funds." Id. ¶ 14.

Furthermore, Plaintiff argues, it is uncontested that Delta accepted the leasehold, "WHERE IS/AS IS" and agreed that "[Adams County] shall not be required at any time to make any improvements, alterations, changes, additions, repairs or replacements of any nature whatsoever in or to the Project." Id. ¶ 15. The Third Addendum provides that "any provisions [of the lease] not inconsistent with this addendum shall remain in full force and effect." [ECF No. 22] at 6. The County performed all the express terms of the Memorandum listed above and was not obligated under any agreement to improve the rail to any specific standard. [ECF No. 21] ¶ 16. Therefore, Plaintiff argues, under the terms of the contract, the County is not in breach. Id. ¶ 15.

Under Mississippi law, the four corners of a contract control and courts will not add obligations to a contract. The County contends that Delta's allegations do not arise out of any obligation described in the Memorandum or the Lease. Therefore, in the alternative to the arguments described above, Plaintiff maintains that it is uncontested that the County did not have an obligation in the Memorandum or Lease Agreement that was

16

breached, and Defendant's counterclaims should be dismissed. Id. ¶ 15.

Delta responds that even though under the Memorandum the County was not obligated to repair rail system to any certain standard, the Third Addendum clearly obligates it to continue to seek additional funds and stipulates that the County failed in its efforts to upgrade the rail facilities. [ECF No. 27] ¶ 13. The obligation to seek additional funds to complete repair of the rail facilities was an ongoing obligation, and Delta maintains that the statute of limitations did not begin to run until either when the County filed suit in 2023 or when the lease was terminated on December 28, 2023. Id.

Defendant next addresses the County's argument that it accepted the leasehold "WHERE IS/AS IS" and that the County would not be required to make any improvements, alterations, etc. "in or to the Project." Id. ¶ 15. Defendant argues that in the Third Addendum the County voluntarily and subsequently agreed it would upgrade the rail facilities, creating an obligation that overrode the preexisting Lease term. Id.

Delta further argues that although it is true that the parties agreed that the County would not have to expend local funds to repair the rail system, this fact "does not tell the entire story because of additional obligations the County made

under the Background section and Section 2 of the Third

Addendum." [ECF No. 27] ¶ 16. The Background section of the

Third Addendum states that

> The parties previously agreed that the county would
> apply and use a state grant to upgrade rail facilities
> as well as allow use by DEN [Delta-Energy Natchez] for
> their business purposes. However, the rail still lacks
> upgrades and the county is seeking additional funds,
> either by grant or against any other payor. During this
> time, the parties desire to allow arrangements so that
> DEN may use rail in the operation of its Project.

[ECF No. 26-2] at 5. Section 2 of the Third Addendum permits

Defendant to continue to use the County's side track "for

six months, or until the County is able to secure the

requisite grant funds to repair the siding." Id. Delta

explains that, contrary to the County's assertion, it does

have a claim for breach of the Third Addendum, because the

Third Addendum obligates the County to continue to seek

additional funds to complete the upgrade of the rail

facilities, which the County failed to do. [ECF No. 27] at ¶

16. Because Delta alleges that County breached the Third

Addendum by failing to obtain additional (non-local) funds,

its counterclaim does stem from an alleged breach of an

agreement between the parties. Therefore, the County's

motion for summary judgment on the grounds that Delta fails

to allege the breach of an actual obligation in any

agreement is DENIED.

G. Conclusion

Adams County is not entitled to summary judgment on any of the above grounds. Delta has demonstrated that factual disputes exist as to the number of people it employed (a number necessary to determine damages); the date upon which the statute of limitations began to run; whether the defendant waived its right to relief; and whether its claims were assigned with the lease. Further, Delta has demonstrated that its counterclaim arises from an alleged breach of an agreement between the parties, such that it is not excluded by the plain terms of the agreements between the parties.

Accordingly,

IT IS HEEREBY ORDERED that Plaintiff Adams County's Motion for Summary Judgment [ECF No. 21] is DENIED.

SO ORDERED, this the 4th day of November, 2024.

/s/ David Bramlette
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE